# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2016, 5:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

William W. Gooden
Mount Vernon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

C.P. & M.P. (Minor Children)

and

S.S. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 4, 2016

Court of Appeals Case No.
65A01-1508-JT-1177

Appeal from the Posey Circuit Court

The Honorable James M. Redwine, Judge

Trial Court Cause Nos.
65C01-1412-JT-237
65C01-1412-JT-238

**Bailey, Judge.**

# Case Summary

S.S. ("Mother") appeals the termination of her parental rights as to C.P. and M.P. ("Children"). We affirm.

# Issue

Mother raises one issue for our review: whether the Department of Child Services ("DCS") established by clear and convincing evidence that there was no reasonable probability that the conditions that resulted in Children's removal from the home would be remedied.

# Facts and Procedural History

M.P. was born to Mother and B.P. ("Father") on August 12, 2012; C.P. was born on March 9, 2011.[1] On September 24, 2013, a caseworker from DCS and a Mount Vernon police officer went to Mother's home in response to a report of neglect as to M.P. The home was extremely cluttered and in disrepair, there was no running water, the refrigerator was not working properly and was full of bugs, and a cooler in which Father kept milk for the Children had stagnant

---

[1] Father was not present and did not participate in the termination hearing, and he does not appeal the termination of his parental rights.

water and no ice. M.P.'s diaper had not been changed for some time. Mother tested positive for oxycodone, amphetamine, methamphetamine, and opiates.

[4] DCS removed Children from Mother's care. On September 26, 2013, DCS alleged Children to be Children in Need of Services ("CHINS"); the court adjudicated the Children as CHINS on November 26, 2013, after several continuances of the initial hearing on DCS's petition. Also in September 2013, Mother was charged with Neglect, as a Class D felony. In August 2014, Mother was found guilty of that offense and was sentenced to probation.

[5] During the pendency of the CHINS proceedings, DCS extended services to Mother, including substance abuse counseling services; inpatient substance abuse treatment; random drug testing; mental health counseling; parent aide services; and supervised visitation with Children. Mother declined inpatient substance abuse treatment, attended outpatient substance abuse counseling, submitted to drug testing, and participated in visits with Children. Mother was found to have used methamphetamine or other drugs on eleven occasions. Though she attended visits with Children, Mother never progressed to unsupervised visitation. Some visits were cancelled because Mother never obtained independent housing, and one individual with whom Mother resided would occasionally refuse to permit visitation with Children at the home. The frequency of cancelled visits increased toward the end of 2014.

[6] On December 19, 2014, DCS filed a petition to terminate Mother's parental rights.

[7] In January 2015, Mother was found to have violated the terms of her probation, and was incarcerated with an expected release date in October 2015.

[8] The termination court conducted a hearing on DCS's petition to terminate Mother's parental rights on April 6, May 11, and May 14, 2015. On July 15, 2015, the court entered its order terminating Mother's parental rights.

[9] This appeal ensued.

# Discussion and Decision

[10] Mother contends that the trial court erred when it terminated her parental rights, arguing that there was insufficient evidence from which the court could properly terminate her parental rights.

[11] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).

[12] Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13]     Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> (iii)     The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[14] If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[15] Here, Mother challenges the trial court's order with respect to Subsections 31-35-2-4(b)(2)(B). Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See L.S.*, 717 N.E.2d at 209. Mother contends that there was insufficient evidence to establish any of the requirements.

[16] We disagree. During the course of the CHINS proceedings, Mother lived with several of her fiancé's family members. One of these individuals would refuse to allow visitation with Children to occur at the residence, resulting in cancelled visits. Thus, Mother was unable to obtain stable housing for supervised visitation with Children, let alone a home in which she and the children could reside. DCS eventually reduced the frequency of Mother's scheduled visits with Children from three days per week to two days per week as a result of Mother's increasingly frequent cancellation of visits in the latter half of 2014. Children, then aged three and two, had not lived with Mother for more than one-and-one-half years by the time of the termination of Mother's parental rights.

[17] During the pendency of the CHINS proceedings, Mother declined inpatient substance abuse treatment until she was incarcerated for violating probation, was "moderately compliant" with outpatient counseling, and prior to her incarceration continued to use methamphetamine. (Tr. at 74.) After the termination petition was filed, Mother continued to use drugs, which resulted in the revocation of her probation and incarceration in January 2015. Mother was imprisoned during the remainder of the CHINS proceedings, and was not expected to be released until October 2015—almost five months after the conclusion of the hearing on DCS's petition, and three months after the court's order terminating Mother's parental rights.

[18] There was clear and convincing evidence from which the termination court could conclude that there was a reasonable probability that the reasons for removal of the children—stable housing and Mother's drug use—would not be remedied, and sufficient evidence from which the court could conclude that continuation of the parent-child relationship posed a threat to Children's well-being.

[19] Affirmed.

Vaidik, C.J., and Crone, J., concur.